US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
AUG 16 2019
DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 5:19CR50059-001 |
| | ) | |
| v. | ) | 18 U.S.C. § 1001(a)(2) |
| | ) | 18 U.S.C. § 1112 |
| | ) | 18 U.S.C. § 1035(a)(2) |
| | ) | 18 U.S.C. § 1341 |
| ROBERT MORRIS LEVY | ) | 18 U.S.C. § 1343 |

# SUPERSEDING INDICTMENT

The Grand Jury charges that:

At all times material to this Superseding Indictment:

## INTRODUCTION

1. The Veterans Health Care System of the Ozarks (hereinafter the "VHSO") at 1100 North College Avenue in Fayetteville, Arkansas, is located within the special maritime and territorial jurisdiction of the United States, in the Western District of Arkansas, Fayetteville Division. The VHSO is operated by the Veterans Health Administration of the United States Department of Veterans Affairs, a department within the executive branch of the United States government.

2. The VHSO operates a health care benefit program that provides veterans with inpatient and outpatient medical care. Services offered by the VHSO include primary care, mental health care, surgical, dental, optometric, chiropractic, preventative health, non-institutional extended care, rehabilitative care, medical devices, pharmacy, social work, nutrition, travel and medical-related incidentals for veterans in twenty three counties in Northwest Arkansas, Southwest Missouri and Eastern Oklahoma. The medical benefits, items and services provided to

veterans at the VHSO are available through a federally funded health care benefit program that affects commerce.

3. The Defendant, **ROBERT MORRIS LEVY**, (hereinafter "**LEVY**") is a board-certified anatomic and clinical pathologist and board-certified hematopathologist. As part of **LEVY's** medical training and specialization in clinical pathology, **LEVY** was familiar with the science of urinalysis, blood testing and toxicology. Toxicology involves the detection, measurement and analysis of potential poisons, including intoxicants and other substances, in living organisms.

4. On November 10, 1997, the Mississippi State Board of Medical Licensure issued **LEVY** medical license number 15663. At various times, he held medical licenses in California, Florida and Louisiana.

5. In 2005, **LEVY** was hired by the VHSO as Service Chief of Pathology and Laboratory Medicine Services. The VHSO required **LEVY** to have and maintain a valid medical license. **LEVY's** Mississippi medical license permitted him to practice medicine at the VHSO.

6. **LEVY's** duties as Service Chief of Pathology and Laboratory Medicine Services at the VHSO included, but were not limited to, rendering diagnoses after examining fluid and tissue samples obtained from VHSO patients; entering information in patients' medical records; assisting radiologists, surgeons and others during procedures called needle biopsies; ensuring that quality standards were maintained for anatomical and clinical laboratory studies, and reporting errors that occurred at the VHSO pathology laboratory. **LEVY** chaired the tumor board and served on various other oversight boards and medical committees at the VHSO. He was responsible for ensuring the pathology department was in compliance with and adhered to the protocol and

procedures of national laboratory and hospital accreditation agencies. **LEVY** also supervised VHSO pathology laboratories in Branson, Missouri and Mount Vernon, Missouri.

7. Doctors and other medical providers at the VHSO relied upon the accuracy of the diagnoses made by **LEVY** and the integrity of the information he entered in patients' medical records. Diagnoses rendered by **LEVY** and the information he entered in patients' medical records largely influenced decisions about the course of medical treatment for VHSO patients.

8. **LEVY** was a provider of medical benefits, items and services for which payment was made under a federally funded health care benefit program that affected commerce.

9. On or before October 1, 2015, VHSO staff reported that **LEVY** appeared to be intoxicated while on duty. On or about October 1, 2015, an administrative fact-finding panel composed of VHSO medical personnel interviewed **LEVY** and he denied the allegation.

10. On or about March 22, 2016, **LEVY** was on duty in the pathology laboratory at the VHSO. He was called to the radiology department to assist with a biopsy on a VHSO patient. **LEVY** appeared intoxicated when he arrived in the radiology department. He was asked to submit to a drug and alcohol test. **LEVY's** blood alcohol content - tested by the VHSO as well as an independent medical facility - was 396.0 milligrams per deciliter on March 22, 2016. The VHSO summarily suspended **LEVY's** privileges to practice medicine and notified the Mississippi State Board of Medical Licensure.

11. **LEVY** received a written removal and revocation of clinical privileges notice from the VHSO. The notice stated that **LEVY** could be removed from duty "due to unprofessional conduct related to high blood alcohol content level while on duty."

12. **LEVY** voluntarily entered an in-patient alcohol treatment program on or about July 11, 2016. He completed the treatment program on or about October 8, 2016.

13. On or about September 19, 2016, in anticipation of returning to practice medicine at the VHSO, **LEVY** entered an impaired physician monitoring program. He executed a contract with the Mississippi Physician Health Program and the Mississippi State Board of Medical Licensure that called for **LEVY** to maintain sobriety to ensure his ability to practice medicine with reasonable skill and safety to patients. **LEVY** agreed to "abstain completely from the use of . . . alcohol and other mood-altering substances" and submit to random drug testing. In the event any test indicated the presence of drugs or alcohol, the Mississippi Board of Medical Licensure would be alerted.

14. **LEVY** returned to work at the VHSO on October 13, 2016. **LEVY** was aware the VHSO expected him to comply with the agreement he had entered into with Mississippi medical authorities. **LEVY** was put on notice by the VHSO that he was subject to random drug and alcohol testing done on-site.

15. In addition to on-site drug and alcohol testing at the VHSO, **LEVY** was randomly drug and alcohol tested through an impaired physician monitoring program. The testing protocol for the impaired physician monitoring program required **LEVY** to randomly provide urine specimens and blood samples at collection laboratories in Fayetteville and Springdale, Arkansas. The specimens were tested at a medical laboratory in Chalfont, Pennsylvania. The results of those tests ultimately were reported to Mississippi medical authorities. Beginning on or about November 11, 2016, and continuing through and including on or about July 3, 2018, **LEVY** provided a total

of 42 urine specimens or blood sample that were collected and tested pursuant to the impaired physician monitoring program. All were reported negative for the presence of drugs or alcohol.

16. On or about October 13, 2017, **LEVY's** colleagues reported that he appeared to be intoxicated on duty. The VHSO tested his urine and blood. No drugs nor alcohol were detected.

17. From at least 2016 until **LEVY's** termination by the VHSO, the Department of Veterans Affairs paid **LEVY** an annual salary of $225,000.00, contributed money to his retirement account and other employee benefits, and awarded him monetary performance bonuses in 2016 and 2017. The monetary performance bonuses were based, in part, upon **LEVY** reporting to the VHSO that his clinical errors were less than five percent. In truth and fact, **LEVY's** reported error rate was a material misrepresentation to the VHSO. Almost ten percent of the diagnoses he made involved clinical errors.

## THE SCHEME AND ARTIFICE TO DEFRAUD

18. From in or about the end of 2016 or the beginning of 2017, the exact time unknown, and continuing at least until on or about July 3, 2018, in the Western District of Arkansas, Fayetteville Division and elsewhere, the Defendant, **ROBERT MORRIS LEVY**, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property from the Department of Veterans Affairs by means of material false and fraudulent pretenses, representations and promises and the concealment of material facts for the purpose of obtaining money in the form of salary, monetary contributions to his employee benefits package and pecuniary performance awards he would not have received had the VHSO known the facts involved in his scheme and artifice to defraud.

## THE MANNER AND MEANS

19. It was part of the scheme and artifice to defraud that **LEVY** intended to consume an intoxicating substance that would not be recognized in routine drug and alcohol testing methodology in order to thwart the detection of an intoxicant in his system when he was subjected to testing by the VHSO.

20. It was part of the scheme and artifice to defraud that **LEVY** purchased a chemical substance to ingest that would enable him to achieve a state of intoxication. The substance was 2-methyl-2-butanol ("2M-2B"). It is a type of alcohol not tested for in standard drug and alcohol testing methodology.

21. It was further part of the scheme and artifice to defraud that **LEVY** purchased 2M-2B, knowing his ingestion of it would not be detected in routine drug and alcohol testing methodology, thus allowing him to conceal his continued consumption of an intoxicating and mood altering substance while employed at the VHSO.

22. It was further part of the scheme and artifice to defraud that **LEVY** intentionally misled medical licensure authorities in Mississippi into falsely believing he was adhering to his contractual agreement to "abstain completely from the use of . . . alcohol and other mood-altering substances" so the VHSO would not be informed of his non-compliance.

23. It was further part of the scheme and artifice to defraud that **LEVY** intentionally concealed from the VHSO that he was not complying with the terms of the contract he had entered into with Mississippi medical licensure authorities.

24. It was further part of the scheme and artifice to defraud that **LEVY** intentionally misled and concealed a material fact from his supervisor, the Chief of Staff at the VHSO, when the Chief of Staff asked **LEVY** what substance he was using.

25. It was further part of the scheme and artifice to defraud that **LEVY** lied to VHSO officials when he stated he was not under the influence of any intoxicant on March 1, 2018. In truth and fact, the presence of 2M-2B was detected in a urine specimen **LEVY** provided to a law enforcement agency on March 1, 2018.

26. It was further part of the scheme and artifice to defraud that **LEVY** intentionally concealed a material fact and made false representations during a hearing to adjudicate **LEVY's** request to return to work at the VHSO.

27. It was further part of the scheme and artifice to defraud that **LEVY** misrepresented the rate of errors he made working in the VHSO pathology laboratory to obtain a monetary bonus.

28. It was further part of the scheme and artifice to defraud that **LEVY** intentionally concealed his use of an intoxicant he knew would not be detected in standard tests performed on his body fluids so that he could receive money from the Department of Veterans Affairs in the form of salary, monetary contributions to his employee benefit package and pecuniary performance bonuses.

29. It was further part of the scheme and artifice to defraud that **LEVY** used and caused others to use interstate wire communications and commercial interstate carriers to execute the scheme and artifice to defraud.

## Counts One through Twelve
## WIRE FRAUD
## Title 18, United States Code, Section 1343

30. The allegations contained in paragraph 1 through and including paragraph 29 are re-alleged and incorporated by reference as though set forth in their entirety.

31. On or about the dates set forth below, each date being a separate count and violation of Title 18, United States Code, Section 1343, in the Western District of Arkansas, Fayetteville Division and elsewhere, the Defendant, **ROBERT MORRIS LEVY**, having intentionally devised the above-described scheme and artifice to defraud and for obtaining money and property from the Department of Veterans Affairs by means of material false and fraudulent pretenses, representations and promises and concealment of material facts, transmitted and caused to be transmitted in interstate commerce the following wire communications:

| Count | Date | Signal and Sound |
|---|---|---|
| 1 | 06/30/2017 | Internet purchase by rmlevy@dog****.org of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Ebay.com account |
| 2 | 08/21/2017 | Internet purchase rmlevy@dog****.org of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Ebay.com account |
| 3 | 10/29/2017 | Internet purchase by rmlevy@dog****.org of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Ebay.com account |
| 4 | 12/14/2017 | Internet purchase by rmlevy@dog****.org of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Ebay.com account |
| 5 | 12/22/2017 | Internet purchase by rmlevy@dog****.org of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. |
| 6 | 01/24/2018 | Internet purchase by rmlevy@dog****.org of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. |
| 7 | 03/09/2018 | Internet purchase by rmlevy@earth****.net of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Amazon Marketplace |
| 8 | 03/20/2018 | Internet purchase by rmlevy@earth****.net of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Amazon Marketplace |
| 9 | 03/27/2018 | Internet purchase by rmlevy@earth****.net of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Amazon Marketplace |
| 10 | 04/06/2018 | Internet purchase rmlevy@earth****.net of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. from Amazon Marketplace |

| Count | Date | Signal and Sound |
|---|---|---|
| 11 | 05/11/2018 | Internet purchase by r rmlevy@earth****.net of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Amazon Marketplace |
| 12 | 06/13/2018 | Internet purchase by rmlevy@earth****.net of 2-Methyl-2-butanol, 97.5+%, 500ml (tert-Amyl Alcohol) from Chemsavers Inc. via Amazon Marketplace |

All in violation of Title 18, United States Code, Section 1343.

## Counts Thirteen through Twenty-Four
## MAIL FRAUD
## Title 18, United States Code, Section 1341

32. The allegations contained in paragraph 1 through and including paragraph 29 are re-alleged and incorporated by reference as though set forth in their entirety.

33. On or about the dates set forth below, each date being a separate count and violation of Title 18, United States Code, Section 1341, in the Western District of Arkansas, Fayetteville Division and elsewhere, the Defendant, **ROBERT MORRIS LEVY**, having intentionally devised the above-described scheme and artifice to defraud and for obtaining money and property from the Department of Veterans Affairs by means of material false and fraudulent pretenses, representations and promises and concealment of material facts and for the purpose of executing such scheme and artifice to defraud and attempting to do so, caused to be sent and delivered by interstate commercial carrier the following packages and parcels:

| Count | Date Ordered | Date Shipped | Address shipped to | Mode of transportation | Tracking Number |
|---|---|---|---|---|---|
| 13 | 06/30/2017 | 07/02/2017 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30392255111 |
| 14 | 08/21/2017 | 08/21/2017 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30398066896 |
| 15 | 10/29/2017 | 10/30/2017 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30397665142 |
| 16 | 12/14/2017 | 12/15/2017 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30395687140 |
| 17 | 12/22/2017 | 12/22/2017 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30390032221 |
| 18 | 01/24/2018 | 01/24/2018 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30398141698 |

| Count | Date Ordered | Date Shipped | Address shipped to | Mode of transportation | Tracking Number |
|---|---|---|---|---|---|
| 19 | 03/09/2018 | 03/11/2018 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30398109027 |
| 20 | 03/20/2018 | 03/21/2018 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30391026030 |
| 21 | 03/27/2018 | 03/27/2018 | *** N Park Ave, Fayetteville, AR | United Parcel Service | 1Z880FE30399878089 |
| 22 | 04/06/2018 | 04/08/2018 | **** N College Ste C, Fayetteville, AR | United Parcel Service | 1Z880FE30390788479 |
| 23 | 05/11/2018 | 05/11/2018 | **** N College Ste C, Fayetteville, AR | United Parcel Service | 1Z880FE30392065808 |
| 24 | 06/13/2018 | 06/13/2018 | **** N College Ste C, Fayetteville, AR | United Parcel Service | 1Z880FE30390213599 |

All in violation of Title 18, United States Code, Section 1341.

**Count Twenty-Five**
**FALSE STATEMENT IN HEALTH CARE MATTERS**
**Title 18, United States Code, Section 1035(a)(2)**

34. The allegations contained in paragraph 1 through and including paragraph 8 are re-alleged and incorporated by reference as though set forth in their entirety.

35. On or about June 4, 2018, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY,** a provider of a medical benefit, item and service for which payment was made by a health care benefit program, in a matter involving a health care benefit program, knowingly and willfully made a material false, fictitious and fraudulent statement and representation in connection with the delivery of and payment for health care benefits, items and services; namely, **LEVY** testified under oath during a hearing at the VHSO that he "had no idea" what "interfering substance" had been detected during a breathalyzer examination on March 1, 2018. These statements and representations were materially false, fictitious and fraudulent because **LEVY** then and there well knew that the interfering substance was 2M-2B.

All in violation of Title 18, United States Code, Section 1035(a)(2).

**Count Twenty-Six**
**FALSE STATEMENT**
**Title 18, United States Code, Section 1001(a)(2)**

36. On or about July 20, 2018, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY**, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, the Department of Veterans Affairs, knowingly and willfully made a materially false and fictitious and fraudulent statement and representation to Department of Veterans Affairs - Office of Inspector General Special Agent Kris Raper when **LEVY** was asked whether he had anything to drink or had "had taken anything" on March 1, 2018, and **LEVY** stated the following: "No, no, no, no. No medication whatsoever and my last drink was May 2016." These statements and representations were materially false and fictitious and fraudulent because **LEVY** then and there knew that he had taken 2M-2B on or about March 1, 2018.

All in violation of Title 18, United States Code, Section 1001(a)(2).

**Count Twenty-Seven**
**FALSE STATEMENT**
**Title 18, United States Code, Section 1001(a)(2)**

37. On or about July 23, 2018, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY**, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, the Department of Veterans Affairs, knowingly and willfully made a material false and fictitious and fraudulent statement and representation to Department of Veterans Affairs - Office of Inspector General Special Agent Kris Raper when **LEVY** stated that he first experimented with 2M-2B in May 2018. These statements

and representations were materially false and fictitious and fraudulent because **LEVY** then and there knew that he ingested 2M-2B prior to May 2018.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## Count Twenty-Eight
## FALSE STATEMENT IN HEALTH CARE MATTERS
## Title 18, United States Code, Section 1035(a)(2)

38. The allegations contained in paragraph 1 through and including paragraph 8 are re-alleged and incorporated by reference as though set forth in their entirety.

39. On or about June 14, 2017, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY**, a provider of a medical benefit, item and service for which payment was made by a health care benefit program, in a matter involving a health care benefit program, knowingly and willfully made a material false, fictitious and fraudulent statement and representation in connection with the delivery of and payment for health care benefits, items and services; namely, **LEVY** made a material false, fictitious and fraudulent statement by entering into the medical record of W.G. that a second pathologist had reviewed the case and that the second pathologist concurred with **LEVY's** diagnosis of non-small cell carcinoma. These statements and representations were materially false, fictitious and fraudulent because **LEVY** then and there knew that a second pathologist had not yet reviewed the case and a second pathologist had not concurred with his diagnosis of non-small cell carcinoma.

All in violation of Title 18, United States Code, Section 1035(a)(2).

**Count Twenty-Nine**
**INVOLUNTARY MANSLAUGHTER**
**Title 18, United States Code, Section 1112**

40. From on or about February 4, 2014, to and including on or about July 26, 2014, at the Veterans Health Care System of the Ozarks in Fayetteville, Arkansas, which is within the special maritime and territorial jurisdiction of the United States, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY**, did cause the death of J.R.G. in the commission of a lawful act which might produce death, done with wanton and reckless disregard for human life, knowing of circumstances that would reasonably cause **LEVY**, to foresee that his conduct might be a threat to the life of J.R.G. in that on or about February 4, 2014, **LEVY** entered an incorrect and misleading diagnosis of diffuse large B cell lymphoma in J.R.G.'s medical record and falsified an entry in J.R.G.'s medical record that stated a second pathologist concurred with the diagnosis of diffuse large B cell lymphoma and on February 10, 2014, **LEVY** changed the incorrect and misleading diagnosis of diffuse large B cell lymphoma to yet another incorrect and misleading diagnosis, namely adenocarcinoma, and entered that misleading and incorrect diagnosis of adenocarcinoma in J.R.G.'s medical record; when in truth and fact, J.R.G.'s tissue biopsy revealed J.R.G. did not have either of the two types of cancers that **LEVY** entered into J.R.G's medical record and **LEVY** well knew that he had falsified that a second pathologist concurred with the diagnosis of diffuse large B cell lymphoma and J.R.G. was treated for a type of cancer J.R.G. did not have. J.R.G. did not respond to the wrong treatment he received and J.R.G. died of small cell carcinoma on or about July 26, 2014.

All in violation of Title 18, United States Code, Section 1112.

**Count Thirty**
**INVOLUNTARY MANSLAUGHTER**
**Title 18, United States Code, Section 1112**

41. From on or about September 22, 2014, to and including on or about September 13, 2015, at the Veterans Health Care System of the Ozarks in Fayetteville, Arkansas, which is within the special maritime and territorial jurisdiction of the United States, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY**, did cause the death of J.D.Q. in the commission of a lawful act which might produce death, done with wanton and reckless disregard for human life, knowing of circumstances that would reasonably cause **LEVY**, to foresee that his conduct might be a threat to the life of J.D.Q. in that **LEVY** entered an incorrect and misleading diagnosis of small cell carcinoma in J.D.Q.'s medical record and falsified an entry in J.D.Q.'s medical record that a second pathologist concurred with the diagnosis of small cell carcinoma, when in truth and fact, J.D.Q.'s tissue biopsy revealed squamous cell carcinoma and **LEVY** well knew that a second pathologist did not concur with the diagnosis of small cell carcinoma, and J.D.Q. died of squamous cell carcinoma, widely spread, on or about September 13, 2015.

All in violation of Title 18, United States Code, Section 1112.

**Count Thirty-One**
**INVOLUNTARY MANSLAUGHTER**
**Title 18, United States Code, Section 1112**

42. From on or about February 10, 2009, to and including on or about April 28, 2016, at the Veterans Health Care System of the Ozarks in Fayetteville, Arkansas, which is within the special maritime and territorial jurisdiction of the United States, in the Western District of Arkansas, Fayetteville Division, the Defendant, **ROBERT MORRIS LEVY**, did cause the death

of D.R.M. in the commission of a lawful act which might produce death, done with wanton and reckless disregard for human life, knowing of circumstances that would reasonably cause **LEVY**, to foresee that his conduct might be a threat to the life of D.R.M. in that **LEVY** recklessly entered an incorrect and misleading diagnosis in the medical record of D.R.M. that stated D.R.M.'s prostatic tissue was benign and D.R.M. relied on **LEVY's** diagnosis that his biopsy was negative for cancer, when in truth and fact, D.R.M.'s prostatic tissue was obviously cancerous, D.R.M. did not receive timely treatment and D.R.M. died of metastatic prostate cancer on or about April 28, 2016.

All in violation of Title 18, United States Code, Section 1112.

A True Bill.

*/s/Grand Jury Foreperson*
Grand Jury Foreperson

DUANE (DAK) KEES
UNITED STATES ATTORNEY

By: Kyra E. Jenner

Kyra E. Jenner
Assistant U.S. Attorney
Chief, Criminal Section
Arkansas Bar No. 2000041
414 Parker Avenue
Fort Smith, AR 72901
Telephone: (479) 783-5125
E-mail: Kyra.Jenner@usdoj.gov