### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff(s) | § | |
| | § | **Case No. 5:19CR50059-001 TLB** |
| | § | |
| vs. | § | |
| | § | |
| ROBERT MORRIS LEVY, | § | |
| | § | |
| Defendant(s) | § | |

### SENTENCING MEMORANDUM

The Defendant, Robert Morris Levy, through his attorneys, John C. Everett, Mark

F. Hampton, and Michael Darren O'Quinn, files the following memorandum:

### Argument

18 U.S.C. § 3553(a) outlines factors that the sentencing Court is to consider when

imposing a sentence – a sentence that is sufficient, but not greater than necessary for the

sentence imposed to:

> Reflect the seriousness of the offense, to promote the law, and to provide
> just punishment for the offense; to afford adequate deterrence to criminal
> conduct; to protect the public from further crimes of the defendant; and to
> provide the defendant with the needed educational or vocational training,
> medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A-D).  Moreover, when determining the sentence, the Court shall

consider other factors, such as "the nature and circumstances of the offense and the

history and characteristics of the defendant" 18 U.S.C. § 3553(a)(1) and (7).  The Court is

also to consider the "kinds of sentences available" and "the needs to avoid unwarranted

sentence disparities." 18 U.S.C. § 3553(a)(3) and (6).

1

**Educational and Employment Background**

The Defendant (hereinafter Dr. Levy) is 54 years old.  He graduated from Northeast High School in North Little Rock in 1984 and finished second in his class.  Later he earned a Bachelor of Science in Chemistry and Biology from Emory College in Atlanta and finished high in his class.  In 1992, he earned a Doctorate of Medicine from the University of Chicago and finished again high in his class.  Upon completing his doctorate in medicine in 1997, he joined the military and served his country well and with honor until July 2001.  When leaving the Air Force, his designation was Major.

Following that Dr. Levy dedicated his complete attention to pathology and working on high risk issues.  During the early 90's, Dr. Levy was a resident in San Francisco.  This was during the height of the AIDS epidemic and Dr. Levy in performing autopsies exposed himself to the AIDS virus before there was any type of cure.  He did this in an effort to save peoples' lives.  As a young doctor, he also performed autopsies during the "Mad Cow" disease epidemic before it was known as a uniformly fatal neurological disease.  He was put at high risk being exposed to such disease but Dr. Levy again wanted to save lives.

Dr. Levy continued to pursue his passion of medicine, and began to work for the Veteran's Administration.  It should be noted that his father was a psychiatrist and worked for the VA during a period in his father's career.

**Alcoholism**

The American College of Physicians notes that Alcoholism is a disease that is recognized, not only by its Board, but also the U.S. National Institutes of Health and the World Health Organization.  Alcoholism affects nearly 15 million Americans each year

2

and American Medical Association describes alcoholism as a "primary chronic disease" with genetic, psychosocial and environmental factors influencing its development and manifestations.  It is a disease much like other chronic diseases including bio-polar disorder and schizophrenia.  All are treatable but, according to professionals, all incurable.

There is no question, based upon the presentence report, that Dr. Levy is an alcoholic.  Most would call him a functioning alcoholic.  Functioning alcoholics are found in every walk of life, including but not limited to, lawyers, judges, physicians, law enforcement, military, and other employment areas.  In other words, it crosses all socio-economic lines.  Undersigned counsels are not offering this as an excuse but merely to point out to the Court that this is a significant factor to consider when fashioning a reasonable punishment under 18 U.S.C. § 3553.

Dr. Levy has filed many objections to the PSR along with the Government. Regardless of the final calculation, the Defense requests the Court fashion a sentence within the guideline range.  Counsel believes that it would be a significant punishment to Dr. Levy and meet all the factors necessary under 18 U.S.C. § 3553.

At 54 years of age and with his career completely taken away from him, Dr. Levy does not have much left for a future.  Moreover, with restitution obviously in play, his savings will be gone completely.  He has lost yet another wife, his life savings, and any personal or real property that he once had.  In other words, Dr. Levy has been stripped of everything that he has worked so hard all these years to save and accomplish. Whatever sentence is given, when he is finally released from prison, the hopes of any type of

employment will be left to some form of clerical or hourly work based upon his age and the inability to use his talents in the medical field.

With the foregoing in mind, the Defense requests the Court to fashion a sentence at the low end of the guideline calculations.

### Lack of a Basis for an Upward Variance

It is anticipated that the Government will argue along with the presentence report for an upward variance in this case.  This is mainly due to the 39 patients who are listed in the presentence report.  The number of deaths and the consequences of misdiagnosis on Dr. Levy's part.  However, the vast majority of the patients listed, and the misdiagnoses occurred well before the time frame of the mail fraud counts and well before Dr. Levy's use of 2M2B.  As to the patients that died all occurred before the time frame of 2M2B use.  For the Court to base an upward variance on those patients and the number of misdiagnoses requires the Court to engage in speculation.  By that the Defense means, "was misdiagnosis attributable to consuming alcohol or 2M2B on that particular day or it was attributable to negligence in the form of civil malpractice?"  To make a determination without anything other than what is listed in the PSR would require grave speculation.  Defense argues that no upward variance should be made in Dr. Levy's case.

**WHEREFORE PREMISES CONSIDERED**, The Defendant moves this Court for all reasonable relief to which he is entitled.

Respectfully submitted,

Mark F. Hampton
Arkansas Bar No. 85066
Attorney for Defendant
1122 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 376-6277

4

(501) 376-6279 fax
Mark@MarkHamptonLaw.com

And

M. Darren O'Quinn
Arkansas Bar No. 87-125
Attorney for Defendant
LAW OFFICES OF DARREN O'QUINN PLLC
B. Ram Suri Professional Building
36 Rahling Circle, Suite 4
Little Rock, AR 72223
Phone: (501) 817-3124
Fax: (501) 817-3128
Darren@DarrenOQuinn.com

And

John C. Everett
Arkansas Bar No. 70022
Attorney for Defendant
P. O. Box 1460
Farmington, Arkansas  72730
Phone: (479) 267-0292
Fax: (479) 267-0564
john@everettfirm.com

CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which shall send notification of such filing to the following:

Kyra E. Jenner
Assistant U. S. Attorney
P. O. Box 1524
Fort Smith, Arkansas  72902

Mark F. Hampton
Arkansas Bar No. 85066
Attorney for Defendant
1122 West Capitol Avenue
Little Rock, Arkansas  72201
(501) 376-6277
Mark@MarkHamptonLaw.com

5