IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 5:19CR50059 |
| | ) | |
| ROBERT MORRIS LEVY | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255

Comes now the United States of America, acting by and through the undersigned Assistant United States Attorney for the Western District of Arkansas, and responds to Defendant's Motion to Vacate Sentence Under 28 U.S.C. § 2255 as follows:

***Background***

On August 16, 2019, a Superseding Indictment was returned as and against Levy by a grand jury seated in the Western District of Arkansas. (Doc. 4). The Superseding Indictment charged Levy with: twelve (12) counts of wire fraud, in violation of Title 18, United States Code, Section 1343; twelve (12) counts of mail fraud, in violation of Title 18, United States Code, Section 1341; two (2) counts of making a false statement in connection with a health care matter, in violation of Title 18, United States Code, Section 1035(a)(2); and three (3) counts of involuntary manslaughter, in violation of Title 18, United States Code, Section 1112. *Id.*

Levy appeared before this Court on June 11, 2020, and entered a plea of guilty to Count 13, mail fraud, and Count 29, involuntary manslaughter, as charged in the Superseding Indictment. (Doc. 38). Levy's guilty plea was accepted by this Court. *Id.* This matter was set for sentencing and on January 22, 2021, this Court sentenced Levy to a total term of imprisonment of

240 months, to be followed by three (3) years of supervised release. (Doc. 75). The remaining Counts of the Indictment were dismissed by this Court upon motion of the government. *Id.*

Levy filed his Notice of Appeal of this Court's findings and imposed sentence to the Eighth Circuit Court of Appeals on February 8, 2021. (Doc. 79). The Eight Circuit Court of Appeals issued its Mandate affirming this Court's findings and imposed sentence on December 22, 2021. (Doc. 84), *See also United States vs. Levy,* 18 F.4th 1019 (8th Cir. 2021). Levy filed his Motion to Vacate Sentence Under 28 U.S.C. § 2255, the subject of this Response herein, on February 27, 2023. (Doc. 86). This Court directed that the government file its Response to Levy's Motion to Vacate on or before April 3, 2023. (Doc. 88, Text Only Order).

***Overview of § 2255***

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The court may grant the motion if it finds "that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement on the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

## *Argument*

### I. Levy's "New Evidence" is Not Material nor Would It Lead to a Lower Sentence

Levy claims new evidence now exists because the Department of Veterans Affairs determined that he did not commit malpractice against four veterans, which if known by the Court at the time of sentencing would have produced a substantively lower sentence. As a result of this new evidence, Levy has requested this Court to permit him to conduct discovery regarding those four malpractice exonerations. However, the new evidence is not material as the record of this matter does not support a finding that this Court considered any the four veterans identified in Levy's Motion when fashioning the imposed sentence. Because the new evidence is not material, Levy's claim is without merit and, as a result, he fails to show good cause for the Court to permit discovery.

When newly discovered evidence is the ground for a section 2255 motion, the district court must apply a substantive standard that includes five prerequisites: (1) the evidence must have been discovered after the trial; (2) the failure to discover the evidence must not be attributable to a lack of diligence on the part of the petitioner; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and, (5) the evidence must be likely to produce an acquittal if a new trial is granted. *Lindhorst v. United States*, 658 F.2d 598, 602 (8th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309 (1982).

The record in this case conclusively shows the new evidence propounded by Levy is not material nor is it of such a nature that if considered by the Court it would result in a substantively lower sentence. The Offense Conduct section of the Presentence Investigation Report (PSR)

included a list of thirty-nine (39) veterans who suffered untimely deaths or sustained a level of harm that warranted disclosure and acknowledgement of Levy's malpractice. (Doc. 57, ¶¶ 67-113). None of the four veterans for which Levy now claims to have been exonerated for malpractice were included in the PSR. Moreover, the PSR indicated there were 589 major discrepancies identified with potential for negative impact on patient care/treatment (Level 3 error). (Doc. 57, ¶ 66). At sentencing, the Court stated in its allocution:

> The aggravating nature of every aspect of both offenses of conviction, which are obviously interrelated by this impairment, I can't find words to understate them. But as the lookback study revealed, this probably didn't begin in 2014 either. It had probably been going on for some time before that. ***The Court is not prepared to punish Dr. Levy with causing deaths or massive bad outcomes in 589 people.*** Those were errors, significant errors, some of which I'm sure fall into the category of reasonable pathologists diligently practicing might differ. Others I'm sure involved errors that had the potential for having significant untoward consequences, but in the big scheme of things, that course may have already been destined.
>
> But if you look at it scientifically, even though there are these outliers and the things that don't truly represent what's going on here, when you have that many datapoints and you draw a line through the middle of them, this conduct is all related. And whether it results from the cause here, the personal cause, whether you were in this state of perhaps depression that led to the drinking and the depression contributed or acted solely in you just not caring anymore, I don't know. But it's all related in some fashion. And I say all that as being important in that it gives context. If this were an isolated – you know, if these two cases, these two situations were isolated, if your conduct in these cases were aberrant of your overall career, that would truly be one thing. That would be a situation where we could say that the guideline range is appropriate. But that's not this case. ***The context here is like an onion with many, many layers. And every single layer is context that's not good.*** And that makes it very difficult to find mitigating nuance.

(Sentencing Tr., pp. 377 – 78) (emphasis added).

Additionally, after considering the advisory guidelines, the § 3553(a) factors, as well as both aggravating and mitigating factors, the Court determined that an upward variance from the guideline range was appropriate in Levy's case. As stated by this Court in its Statement of Reasons for its basis for a variance:

> The facts supporting the conviction for involuntary manslaughter show that the defendant prioritized satisfying his own addiction over providing proper patient care. He practiced medicine with reckless disregard for his patients' lives and behaved in an arrogant, callous manner, even going so far as to falsify medical records so that it would appear that his colleagues agreed with his inaccurate diagnoses when, in fact, those colleagues either disagreed or never reviewed the files in the first place. ***The Court is further persuaded, based on the facts presented in the evidentiary hearing and in the Presentence Investigation Report, that the victim in the Count of conviction for involuntary manslaughter was not the defendant's only victim. The sheer number of misdiagnosed veterans identified in this case indicates that the defendant knowingly practiced medicine with a degree of incompetence and recklessness that counsels in favor of a significant upward variance.***

Doc. 76, ¶ VIII (emphasis added). None of the four veterans identified in Levy's filing were considered as Level 3 cases; therefore, the four veterans were not considered egregiously harmed by Levy. As a result, none of the four veterans identified by Levy were taken into account by this Court when fashioning Levy's sentence.

Further, as explained in Government's Exhibit 1, in addition to the 589 Level 3 misdiagnoses (major diagnostic discrepancy with potential for negative impacts on patient care), which were included in the PSR, there were an additional 2,444 Level 2 misdiagnoses (disagreement in diagnoses with minimal impact on patient care) that were directly attributed to

the recklessness of Levy. Two of the four veterans listed by Levy in his § 2255 Motion, [redacted] and [redacted], were classified as Level 2 misdiagnoses at the time of sentencing. Levy's misdiagnoses of [redacted] and [redacted], as outlined in Government's Exhibit 1, remain classified as Level 2 misdiagnoses. The other two veterans identified by Levy, [redacted] and [redacted], were classified at Level 0 (no deficiency or diagnostic error) at the time of sentencing. They both remain classified at Level 0.

Thus, the four veterans identified as "new evidence" by Levy would not have been considered among the 39 veterans who suffered untimely deaths or sustained a level of harm that warranted disclosure and acknowledgement of Levy's malpractice. Nor did these four veterans fall among the other 589 Level 3 major deficiencies or diagnostic errors identified by the PSR. Simply put, the four veterans identified by Levy were outside of the "sheer number of misdiagnosed veterans identified in this case" that the Court identified as an aggravating factor when weighing the § 3553(a) factors and, ultimately, determining that an upward variance was warranted. As such, there is nothing in the record of this matter to support that this "new evidence" would alter the Court's imposed sentence in any manner.

In the alternative, even if this Court had considered any of the four veterans enumerated by Levy, there has been no change in the status of these veterans in relation to the diagnoses rendered by Levy. As stated above and further outlined in Government's Exhibit 1, their statuses on the date of sentencing Levy, or January of 2021, remain unchanged as of March 2023.

## II. The Court Should Deny Levy's Request for Discovery

Because the new evidence is not material nor is such a nature that even if considered by the Court would produce a substantively lower sentence, the Court should deny Levy's request for discovery. Rule 6 of the Rules Governing Section 2255 Proceedings allows for discovery as follows, in relevant part:

Rule 6. Discovery

> (a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.
>
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1977). *Dyer v. United States*, 23 F.3d 1421, 1424 (8th Cir.1994). Hence, "[f]ederal habeas discovery is the exception rather than the rule." *United States v. Vennes*, No. 0:11cr00141, 2015 WL 1954368, at *17 (D.Minn. Apr. 29, 2015) (*quoting Prentice v. Baker*, No. 3:10–cv–00743, 2013 WL 1182065, at *2 (D.Nev. Mar. 19, 2013)).

The Eighth Circuit Court of Appeals has noted that "discovery is available in habeas proceedings at the discretion of the District Court." *Barron v. Keohane*, 216 F.3d 692, 693 (8th Cir.2000) (citing Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts). In a request to conduct discovery, a petitioner must show good cause. Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is ... entitled to

relief...." *Bracy,* 520 U.S. at 908-09 (1997) (*quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir.2009). What constitutes "good cause" is within the discretion of the trial judge. *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir.1996). When determining whether "good cause" exists, the court must identify the "essential elements" of the claim that is asserted, *Bracy*, 520 U.S. at 904, and then evaluate whether the " 'specific allegations before the court show reason to believe that [the movant] may, if the facts are fully developed, be able to demonstrate that [relief is warranted],' " *Id*. at 908–09 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)). In the absence of a showing of good cause, a District Court does not abuse its discretion in denying a request for discovery in a § 2255 proceeding. *Smith v. United States*, 618 F.2d 507, 509 (8th Cir.1980).

The United States asserts that Levy has failed in making his showing of good cause because none of the requested discovery would demonstrate that relief is warranted in his case. This is because the new evidence propounded by Levy is not material nor is such a nature that if considered by the Court would result a substantively lower sentence. As such, there is no basis upon which this Court could conclude that Levy's requests for discovery would assist in any manner in granting his requested relief. Therefore, good cause has not been shown.

## III. No Evidentiary Hearing Is Required and No Certificate of Appealability Should Issue

Title 28, U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

28 U.S.C. § 2255(b).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. . .

The Eighth Circuit Court of Appeals has explained,

> "Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." [*Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir.2013)]. "The district court is not permitted to make a credibility determination on the affidavits alone." *Id*. at 1206.

*United States v. Sellner*, 773 F.3d 927, 929 (8th Cir.2014). Indeed, "[w]here petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.' " *Franco v. United States*, 762 F.3d 761, 763 (8th Cir.2014) (*citing Watson v. United States*, 493 F.3d 960, 964 (8th Cir.2007), *in turn quoting Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir.1994)). On the other hand,

> [The district court] may ... deny an evidentiary hearing if "(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." [*Thomas*, 737 F.3d] at 1206–07 (alterations in original) (*quoting Buster v. United States,* 447 F.3d 1130, 1132 (8th Cir.2006)).

*Sellner*, 773 F.3d at 929-930; *accord Anderson v. United States*, 762 F.3d 787, 792 (8th Cir.2014) (*citing* 28 U.S.C. § 2255(b)); *Franco*, 762 F.3d at 763; *Winters v. United States*, 716 F.3d 1098,

1103 (8th Cir.2013). The district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Sellner*, 773 F.3d at 929; *see also United States v. Frausto*, 754 F.3d 640, 642 (8th Cir. 2014) (explaining that, to determine whether the district court abused its discretion in denying an evidentiary hearing, the court must review *de novo* the validity of a petitioner's § 2255 claims).

Here, an evidentiary hearing is both unwarranted and unnecessary as the issues raised by Levy in his § 2255 Motion are resolvable by reviewing the record. As discussed above, after reviewing Levy’s claims against the record and applicable law, it can be conclusively determined that Levy’s argument is without merit as it would not result in a substantively lower sentence and is contradicted by the record as the four veterans identified by Levy were not among the harmed veterans considered by the Court in its sentencing. Thus, an evidentiary hearing is unnecessary. *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir.1998).

When the district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without a certificate of appealability. Such a certificate may issue “only if the applicant has made a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). A “substantial showing” under this section is a showing that “reasonable jurists would find the district court’s assessment of the constitutional claims debatable or wrong.” *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a “substantial showing” is made if “a court could resolve the issues differently, or the issues deserve further proceedings.” *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997). In this case, as demonstrated above, Levy has not made a substantial showing of the denial of a constitutional right. Accordingly, this Court should deny any request for a certificate of appealability.

***Conclusion***

WHEREFORE, the United States respectfully requests that Levy's Motion to Vacate Sentence Under 28 U.S.C. § 2255 be ***DENIED*** and requests the Court deny any motion by Levy for a certificate of appealability for his failure to make a substantial showing that he was denied a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

Respectfully submitted,

David Clay Fowlkes
United States Attorney

By: *Bryan A. Achorn*

Bryan A. Achorn
Assistant U.S. Attorney
Arkansas Bar No. 2001034
100 Reserve Street, Ste. 343
Hot Springs, AR 71901
(479) 494-4080
Bryan.Achorn@usdoj.gov

**CERTIFICATE SERVICE**

I, Bryan A. Achorn, Assistant U. S. Attorney for the Western District of Arkansas, hereby certify that on this 30th day of March, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing and that a copy of the foregoing was also sent via email to the following:

Jeff Rosenzweig
Attorney for Robert Morris Levy

Bryan A Achorn
Bryan A. Achorn
Assistant U.S. Attorney